Good morning, I'm Devin McLaughlin, Ford defendant and appellant, James Young, hopefully these are working okay. As you can see from our briefs, our contention is that it was error for the district court to deny a hearing request on defendant's challenge to the warrant. Defendant's challenge to the warrant was whether the NCMEC and the state police exceeded the scope of the private search by Facebook, and the judge denied a hearing because defendant could not put forth an affidavit based on personal knowledge that was sufficiently detailed and specific that would warrant and create a genuine issue of material fact. We are asking the court to recognize the realities of the context, which is that the defendant is the last person who is going to know what NCMEC and Facebook and the state police did. He's not going to be the one that knows that. And in that context, imposing on the defendant the particularized affidavit requirement is a challenge. In this context, we're asking your honors that it should be recognized that there should be some relaxed criteria in terms of ascertaining what the defendant needs to put forward in order to be able to get behind what happens. Do you have any precedential cases addressing this precise issue? No, I'm asking this court to start down that path. I don't have, obviously there's a lot of case law, which Pena sets forth this is what we need in order to be able to do a genuine issue of material fact. We do have cases in other contexts by this court where, depending on the context, we're going to relax that review because of what the consequences are. But in this particular scenario, which is what are we going to require to create a genuine issue of material fact, no, I don't have case law on it. It is interesting, and the government was kind enough to point out that, listen, in Mayer and Tennant, I think, are the two cases discussed. There were no hearings in those cases. There weren't hearings. But the interesting thing is when you look at those cases, the facts were not disputed because you ended up having detailed declarations from somebody at NCMEC or somebody at Google or whoever the ESP provider was that really laid out this is what happened. In Tennant, the government offered an affidavit that said this is what happened. In this case, we don't have that. You have the warrants on their face, but you don't have this is what happened. And what my client is asking for and asked for is I want an opportunity to have a hearing to determine exactly what happened because maybe as a layperson, whatever is going on behind the void between Facebook to NCMEC to state police is something that we should have an opportunity to explore and figure out whether this is really what's happening. And did the folks at Facebook really themselves look at all this information, which would shield it from inquiry or private search exception? Let me just jump in for a second. In terms of this being a unique context where there's less information available to you and so perhaps the affidavit requirement should be relaxed in some way, I'm not necessarily unsympathetic to that. But in terms of this particular case, there is an assertion that in fact the Facebook employee did view the image and that's how it was designated as child pornography. Your argument seems to be, well, maybe that's not true. And it doesn't seem as if your argument is premised on we don't know all these intermediate steps that occurred between Facebook and the New York State Police. Your argument seems to be more that initial assertion in the report that the Facebook employee did actually view it. Well, that just might not be true. And that doesn't seem like enough of an assertion, putting aside even the question of an affidavit. And Your Honor is 100% correct that in this case, as opposed to ambiguities about hash and did they hash it or not hash it, on the face of the report, it indicates that the Facebook folks viewed the uploaded file. It says, yes, we saw that. We don't – I mean, that is its piece of paper. I don't see it being a sworn to. I don't have a declaration saying this is what we actually did. Those are the things that, yes, we would need to explore. Facially, sure, the piece of paper says we viewed the entire thing. But obviously not every assertion in the piece of paper is accurate and we would want the opportunity simply to have a hearing. It may well be at the end of that hearing the court says, okay, you know, it's been proven, and or the government submits a detailed affidavit or declaration which the court says, well, that's enough. But here we just have the piece of paper. Agree with you, the piece of paper says we viewed it. Agree that in order for us to prevail, we would have to have the person say, no, that isn't exactly what that means. This means X, Y, or Z. But we don't know that because we didn't have a hearing. So that's where we are. I do want to emphasize, and obviously the court is well aware of the importance of the issues at stake in these contexts. Mayer was of very illustrative opinion on that in terms of the constitutional rights of the individuals who end up having very private things looked at. And that's the reason that Judge Radji went ahead and found that we're going to look pretty closely at these private search doctrine issues. And I think it's an important opportunity for the court to say, yes, we should have hearings on these. Frankly, there are more detailed affidavits to figure out exactly what's going on so we can determine whether the constitutional rights were violated. Thank you. All right. Thank you. Good morning. Melissa Marangola, appearing on behalf of the United States. I also represented the United States in the lower courts in the prosecution of this case. The district court acted squarely within its discretion in denying the defendant's request for the evidentiary hearing in this case. As the court pointed out, it's the defendant's burden to make a preliminary showing that there are contested facts that need to be flushed out at a hearing. And he didn't do it in this case. He supplied no affidavit. So the district court was left with one set of facts that were not contested and showed that the evidence seized in question was seized pursuant to a court-ordered search warrant and that that search warrant was amply supplied by probable cause. This defendant is focusing your attention on the one cyber tip in this case that involves the photograph. As he conceded in page 90 of the government appendix, it shows that the Facebook employee actually viewed the image. But what it doesn't talk about is the second cyber tip that also was used to supply the probable cause for the warrant. And that is on page 58 of the appendix. And as the court is aware, that cyber tip is stand-alone and involves the chats between the defendant and the then-9-year-old, which contained sexually explicit conversations that stand-alone justify the search warrant into the residence of the target. So there's no need for a hearing in this case. And I think that the facts in this case are so clear that I'll rely on my papers unless anyone has any questions or inquiry for me. Thank you. Thank you. I know. She got to bring her son and had a nice time last night. Thank you. So, sorry, to briefly and very briefly in reply, there was an affidavit. Whether that affidavit was sufficient or not is obviously up to the court. But if you look at page A-100, the attorney submitted an affidavit, understanding it was upon information and belief. It may not have the detail necessary in the court's view, but there was an affidavit submitted. And the request for a hearing was not simply as to cyber tip number one. It was as to both. And so the fact that cyber tip number two alone would have established probable cause and agree that the messages in there would have established probable cause doesn't vitiate what we're asking for as a hearing in terms of what actually happened between Facebook, Nick Nick, and the state police. Thank you. All right. Thank you both. We'll take the case under advisement.